JOHN H. CREIGHTON, APPELLEE, V. ALFRED KEENS ET AL., APPELLANTS.

FILED JUNE 13, 1911. No. 16,492.

Master and Servant: INJURY: ASSUMPTION OF RISK: NEGLIGENCE. Evidence examined and found to prove without substantial contradiction that the plaintiff, with full knowledge of existing conditions, assumed the risk, and that his own negligence was the proximate cause of the injury complained of. The judgment is therefore reversed.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. Reversed.

J. B. Strode, for appellants.

Guile & Guile, contra.

SEDGWICK, J.

The defendants were contractors, and took the contract to paint the inside walls of the First Presbyterian Church in Lincoln. The plaintiff is a painter by trade, and was

employed by defendants in doing this work. While so employed, he fell and was injured, and brought this action against the defendants in the district court for Lancaster county to recover damages. Upon trial to the jury he recovered a verdict and judgment, and the defendants have appealed.

He alleged negligence on the part of the defendants as follows: "That it was the duty of the defendants to provide this plaintiff with suitable and proper scaffolding upon which to stand while doing the work for which he was employed, which defendants failed and neglected to do, and, in order to reach the interior of the gable of the said First Presbyterian Church, a temporary scaffold was erected by placing planks upon ladders, upon which it was necessary to use stepladders; whereas, had the defendants provided this plaintiff with suitable and proper scaffolding constructed by carpenters, it would not have been necessary for this plaintiff to have used the temporary scaffold complained of." He also alleged in his petition: "That, at the time plaintiff received the injuries herein complained of, he was in the exercise of due care and caution on his part, and that he was injured through the carelessness and negligence of the defendants in failing to furnish him with a safe place to work, and in not constructing a suitable and proper scaffold upon which this plaintiff could stand while so engaged as herein alleged."

The defendants in their answer admitted the employment and the accident, and alleged that "at the time of the injury complained of, and for a long time prior thereto, the plaintiff was in the employ of the defendants, and was familiar with the materials furnished by the defendants for the construction of scaffolds in places similar to the place where the accident occurred and the injuries complained of were received, and that plaintiff was familiar with the way scaffolds in such places were constructed, and that plaintiff superintended and assisted in the construction of the scaffold referred to in his petition as the one that fell and caused his injury, and defendants allege that

the dangers were obvious and apparent, and were known, or in the exercise of reasonable care ought to have been known, by the plaintiff, and that plaintiff assumed the risk of the dangers resulting in the injury complained of in the plaintiff's second amended petition. Defendants allege that said injury was caused by the negligence and want of ordinary care on the part of plaintiff, and was not caused by any negligence on the part of the defendants or either of them."

From the plaintiff's testimony it appears that he had worked as a painter and decorator for about 34 years, and during the last 25 years before the accident had followed that business in Lincoln. He had been in the employment of these defendants, or one of them, ever since "they had been in business." The defendants did not make a business of painting and decorating high walls and ceilings, and were not equipped for that work as those who follow that as special business are accustomed to be. The plaintiff testified that he was working with one Marsteller, who had recently been employed. The ceiling in the room in which they were painting was generally about 14 feet from the floor. There were, however, gables extending perhaps 4 or 5 feet higher. The defendants themselves were not present, and, so far as any one was in charge of the work, the defendants relied upon the plaintiff himself to direct the workmen. They all testified that they had "trestles" which stood 10 feet or $10\frac{1}{2}$ feet from the floor. These appear to have been of an approved pattern, and would support a platform 6 or 8 feet wide. In order to reach the gables referred to, it was necessary either to use extension ladders, with which they were supplied, or to arrange a support some 4 or 5 feet higher than the platform supported directly by the trestles. The plaintiff and Marsteller, who was working under his direction, appear to have supported some planks at one end by one of the trestles, and instead of using a trestle to support the other ends of the planks they placed a stepladder there, and then upon the platform so formed they appear to have placed another

stepladder. The evidence is not very clear as to how this was arranged, but without doubt it was not satisfactory to the plaintiff. He testified: "I gave Marsteller orders to stand firm on the plank, but I don't think he did." Marsteller and another workman who was present testify that the cause of the accident was the using of the stepladder to support the planks instead of using two trestles, and that there was another trestle there that might have been used instead of the stepladder. The plaintiff himself upon this point was asked and answered as follows: "Q. If you had used the two trestles instead of one trestle and a stepladder, would the scaffolding have fallen? A. It might not. Q. It would have been safe to work on, then, if you had used the trestle, would it? A. I could not say it was safer than the other; it might have been more safer. Q. In your judgment, wouldn't it have been much safer than the platform you worked on? A. Well, I suppose it would. Q. Would have been very hard to have pushed that scaffolding as you did this one, if there had been two trestles under there instead of one trestle and a stepladder, would it not? A. Well, I suppose it might have been. Q. Isn't it your judgment now, Mr. Creighton, that if you had used the two trestles to build up your scaffolding instead of using one stepladder and a trestle this accident would not have happened? A. Yes, sir."

We see, therefore, that the plaintiff's own testimony established both defenses alleged in the answer without contradiction. He was perfectly familiar with all the appliances that were being used. He had more experience and was better qualified to judge of the danger of using them than were the defendants themselves. He planned these unstable supports and used them rather than to use the extension ladders, which the evidence shows without contradiction he might have used without danger. Whatever risk there was in so doing he clearly assumed upon his own responsibility. The evidence in regard to his own contributory negligence is equally conclusive. It is undisputed that there was another trestle furnished him

which he might have used instead of the unstable step-ladder as the foundation of his support, and he testifies himself that if he had done so the accident would not have happened. There was, therefore, no question of fact to be submitted to the jury, and under such circumstances the jury should have been instructed to render a verdict for the defendants.

The judgment therefore is reversed and the cause remanded.

REVERSED.

ROOT, J.

I concur on sole ground that plaintiff assumed risk.